IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:07CV394

| | |
|---|---|
| TWO MEN AND A TRUCK INTERNATIONAL, INC., a Michigan corporation, ) ) ) ) | |
| Plaintiff, ) ) | |
| Vs. ) ) | **MEMORANDUM AND ORDER** |
| CLETE, INC., a North Carolina corporation, d/b/a TRUCK AND TWO GUYS MOVING; and BRUCE HENSLEY, an individual, jointly and severally, ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on Plaintiff's motion for a preliminary injunction. For the reasons stated herein, the Court will grant the requested preliminary injunction, however, rulings on Plaintiff's motions for default judgment and permanent injunction and for attorney fees and costs will be deferred.

## I. PROCEDURAL HISTORY

Plaintiff, who is in the moving business, filed a complaint on December 18, 2007, against Defendants Clete, Inc., d/b/a Truck and 2 Guys Moving, and Bruce Hensley, the owner of Clete. According to the complaint, Defendants, who are also in the moving business, are actively advertising and operating a company whose business name bears a confusing similarity to Plaintiff's nationally recognized trademark. **Verified Complaint, filed December 18, 2007, at 4-5.** The complaint alleges trademark infringement and unfair competition in violation of the federal Lanham Act and Chapter 75 of the North Carolina General Statutes, as well as unjust enrichment. *Id.* **at 9, 13, 15.** Based on these causes of action, the complaint seeks an injunction that would prevent Defendants from advertising or operating their business as "Truck and 2 Guys Moving" or any other confusingly similar name. *Id.* **at 12.** It also requests monetary damages, attorney's fees, and statutory interest. *Id.* **at 13-16.**

On January 7, 2008, Plaintiff moved for a preliminary injunction, seeking to enjoin Defendants from using the designation "Truck and 2 Guys Moving." **Plaintiff's Motion for Preliminary Injunction, filed January 7, 2008, at 3.** Plaintiff also requested that the Court require

Defendants to assign their business telephone numbers to Plaintiff; provide accounts of sales and profits to Plaintiff; and destroy or surrender all labels, signs, vehicles, and other advertising bearing the confusingly similar business name. **Plaintiff's Motion for Preliminary Injunction, filed January 7, 2008, at 3-4.** The Court denied this motion without prejudice, finding that the record, at that time, contained no indication that either the complaint or the motion for preliminary injunction had been successfully served on any of the Defendants. **Order, filed January 30, 2008, at 3-4.**

Plaintiff then made a number of attempts to serve Defendants with the summons and complaint. **Ex Parte Motion for Alternative Service, filed March 6, 2008, at 2.** Defendants, however, consistently acted to evade service of process, using deception and – it appears – threatening tactics.[1] *Id.* After considerable difficulties, Plaintiff requested the Court to detail the United States Marshals Service to effect service of process. *Id.*

---

[1] Plaintiff represented to the Court that it had hired a private investigation firm to serve Defendants with the complaint and summons. According to Plaintiff, after two unsuccessful attempts to serve Defendants, the firm refused to send its employees back again, believing Defendant Hensley to be dangerous. **Ex Parte Motion for Alternative Service,** *supra*, **at 2.**

The Court did so, and the Marshals Service, after several attempts, finally managed to serve the summons and complaint. **Order, filed March 17, 2008, at 1-2 (finding that Plaintiff had used its best efforts to effectuate service and that adequate cause existed to involve the Marshals Service); Process Receipt and Return, filed March 31, 2008, at 1, 3 (indicating that Defendant Hensley again attempted to evade service and that multiple endeavors and surveillance were required in order to successfully serve him).**

Plaintiff then renewed its motion for preliminary injunction. **Plaintiff's Motion for Preliminary Injunction, filed March 31, 2008.** Plaintiff served its renewed motion on Defendants by mailing it to their last known address, in accordance with Federal Rule of Civil Procedure 5.[2] Additionally, at

---

[2] Plaintiff later notified the Court, however, that the renewed motion was returned by the post office, marked "not deliverable as addressed – unable to forward." **Letter from Plaintiff's Counsel, filed April 10, 2008, at 1.** Thereupon, Plaintiff deposited the necessary documents with the Clerk's office, where Defendants eventually retrieved them. **Exhibit 2, Declaration of James M. Harrington,** *attached to* **Plaintiff's Memorandum of Law in Support of Motion for Default Judgment and Order for Permanent Injunction, filed June 4, 2008, at 3.** The Court notes that the Federal Rules consider service to have been successfully effectuated as of the date the motion was mailed. **Fed. R. Civ. P. 5(b)(2)(C) (providing that, in the event a pleading is mailed to a person's last known address, "service is complete upon mailing.").**

Plaintiff's behest, the Clerk made an entry of default against Defendants on May 15, 2008.  **Application for Entry of Default as to Defendants Clete, Inc. and Bruce Hensley, filed May 6, 2008; Entry of Default, filed May 15, 2008.**   Plaintiff then requested a default judgment and a permanent injunction against Defendants.  *See* **Motion for Default Judgment and Order for Permanent Injunction, filed June 4, 2008; Plaintiff's Memorandum of Law in Support of Motion for Default Judgment and Order for Permanent Injunction, filed June 4, 2008.**

## II.  DISCUSSION

### A.  Motion for Preliminary Injunction

Federal Rule of Civil Procedure 65 governs the entry of injunctive relief and provides in pertinent part that, "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required."  **Fed. R. Civ. P. 65(d)(1).**  In analyzing the propriety of a preliminary injunction, the Fourth Circuit has observed:

> [P]reliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly.  The limited circumstances amount to the

> demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits. If that need is not presented, then a preliminary injunction should not be considered. But if the need is demonstrated, then the entry of a preliminary injunction rests in the discretion of the district court, which is informed by balancing factors under an analysis conducted pursuant to the familiar four-part test described in *Blackwelder* [*Furniture Co. of Statesville v. Seilig Manuf. Co.*, 550 F.2d 189, 194-96 (4th Cir. 1977)]. Under this test
>
>> a court should consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.
>
> Further, the plaintiff bears the burden of establishing that each of these factors supports granting the injunction.

***In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003) (internal citation and quotation marks omitted).** "In applying this four-factor test, '[t]he irreparable harm to the plaintiff and the harm to the defendant are the two most important factors.' . . . Emphasis on the balance of these first two factors results in a sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa." ***Id.***

**(alteration in original) (quoting *Rum Creek Coals Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).**

In this case, therefore, the Court must first examine whether the "limited circumstances" described in *Microsoft* exist here: namely, whether Plaintiff has demonstrated "a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." *Id.*

Plaintiff's complaint includes an affidavit describing numerous specific instances in which customers have confused "Two Men and a Truck" and "Truck and 2 Guys Moving," including several occasions in which unhappy customers of Defendants expressed dissatisfaction to or about Plaintiff, thinking the two were the same. **See Exhibit C, Affidavit of Thomas H. Campbell, *attached to* Complaint, *supra*, at 3-4.** Based on these occurrences, Plaintiff maintains that "Defendants' actions are depriving and/or damaging Plaintiff's market goodwill and confusing Plaintiff's prospective customers." **Motion for Preliminary Injunction, *supra*, at 15, 19-20 (citing instances of actual confusion by customers and potential customers).** The Court finds that there is at least a

temporary need to prevent future injuries of this type while this litigation is resolved and that a preliminary injunction would aid in preserving the Court's ability to render a judgment in the future. The first step of the *Microsoft* test is, therefore, satisfied.

Having determined that the "limited circumstances" are present in which a preliminary injunction may be issued in the Court's discretion, the Court must now decide whether to exercise that discretion. The Court's decision is informed by the four-prong analysis described in *Blackwelder*. The first *Blackwelder* factor is the likelihood of irreparable harm to Plaintiff absent the requested relief. Particularly in light of the documented instances of misplaced hostility by Defendants' customers, the Court finds that enabling Defendants to continue with the alleged infringement is very likely to cause irreparable harm to Plaintiff in the form of lost business, decreased revenue, and loss of reputation and goodwill.

The second *Blackwelder* factor is the likelihood of harm to Defendants from a preliminary injunction. Defendants could indeed incur harm from even a temporary prohibition on the use of their "Truck and 2 Guys Moving" business name; however, the likely harm to Plaintiff from a lack of injunction is potentially greater, given that Defendant's business is

only about a year and a half old and Plaintiff has been in business since 1985.  **Motion for Preliminary Injunction,** *supra,* **at 3, 9.**

The third factor is the likelihood that Plaintiff will succeed on the merits.  Given Defendants' history of total passivity and non-responsiveness in this lawsuit, coupled with the striking similarity between Plaintiff's and Defendants' business names, the Court finds that this factor weighs very heavily in Plaintiff's favor.

Finally, as to the fourth factor – public interest considerations – as noted above, Plaintiff has carefully documented instances of customers' mistaking Plaintiff for Defendants and vice versa.  It appears likely that a preliminary injunction would at least temporarily eliminate the potential for such confusion, which would indeed be good for the public.

On the basis of these considerations, the Court concludes that entry of a preliminary injunction is proper in this case.  Although Defendants will likely incur harm from such an injunction, the other three *Blackwelder* factors are heavily in Plaintiff's favor and outweigh any potential harm that Defendants may suffer.

**B. Motion for Default Judgment and Permanent Injunction**

After receiving an entry of default by the Clerk, Plaintiff has moved for entry of a default judgment and permanent injunction. In addition to the injunction, Plaintiff requests the following monetary relief: (1) treble damages "in consequence of [Defendants'] . . . willful acts of service mark infringement and unfair competition"; (2) treble damages "in consequence of [Defendants'] . . . willful acts, which have caused injury to Plaintiff's goodwill and reputation, and caused Plaintiff to suffer damages in lost revenue due to Plaintiff's franchisees' lost sales"; (3) statutory interest; and (4) attorneys' fees and expenses totaling $22, 210.18. **Motion for Default Judgment,** *supra***, at 5-6.** Accompanying affidavits detail the attorneys' fees and expenses incurred thus far in the prosecution of this litigation. *See* **Exhibits 2 and 3, Affidavits and Expense Charts** *attached to* **Motion for Default Judgment,** *supra*. Plaintiff has not, however, attached any documentation pertaining to the two different types of treble damages it requests.

The undersigned recognizes that Defendants' past conduct and recalcitrance make it difficult for Plaintiff to ascertain the exact amount of damages. Therefore, as part of the accompanying preliminary injunction,

the Defendants will be required to provide the Court and Plaintiff financial information regarding sales and profits while operating under the infringing name.  **See Diane Von Furstenberg Studio v. Snyder, 2007 WL 3143690, at *4, 2007 U.S. Dist. LEXIS 78915, at *11 (E.D. Va. 2007) (noting that "[c]ourts are given great discretion in their determination of the amount of statutory damages to be awarded in each case under the Lanham Act" and listing specific considerations to be used in determining the proper amount of damages in trademark infringement cases).**  This action will, of necessity, defer any ruling on the Plaintiff's motion for default judgment and permanent injunction until such time as the Defendants comply with the Court's preliminary injunction or the deadline for doing so expires.

As to Plaintiff's request for attorneys' fees and expenses, Plaintiff has already named a sum certain and submitted the necessary supporting documentation.  "Under the Lanham Act, attorney['s] fees may be granted in 'exceptional' trademark infringement cases where 'the defendant's conduct was malicious, fraudulent, willful or deliberate in nature.'"  **Id. at *6, 2007 U.S. Dist. LEXIS 78915 at *19-20 (quoting People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001)); see 15 U.S.C. §1117(a) (provision of Lanham Act discussing**

**awards of attorneys' fees).** However, because attorney fees and expenses will no doubt continue to be incurred until this litigation is concluded, the Court will also hold in abeyance Plaintiff's request for attorney fees and costs to allow Plaintiff to amend such request and for a single order to encompass the entire fee request.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for a preliminary injunction is hereby **GRANTED**, and such is filed contemporaneously herewith.

**IT IS FURTHER ORDERED** that Plaintiff's motions for a default judgment, permanent injunction, and for attorney fees and costs are hereby held in abeyance pending further developments in this litigation.

Signed: June 18, 2008

Lacy H. Thornburg
United States District Judge